IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ANGELA MICHAEL**                                                                  **PLAINTIFF**

**v.**                                                         **CIVIL ACTION NO. 3:20-cv-127-JMV**

**COMMISSIONER OF**
**SOCIAL SECURITY**                                                     **DEFENDANT**

## MEMORANDUM OPINION

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding an application for a period of disability and disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The Court, having reviewed the record, the administrative transcript, the briefs of the parties, and the applicable law and having heard oral argument, finds that for the reasons set out below, the Commissioner's decision should be affirmed.

**Standard of Review**

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court recently explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

## Discussion

For her first argument, Ms. Michaels contends the ALJ's decision "as a whole" cannot be based on substantial evidence because he erred by finding the claimant appeared at the April 2019 administrative hearing, when she did not. Plaintiff goes on to contend her procedural due process rights were violated because she was denied the right to appear and testify at an administrative hearing. The Court agrees with Defendant that Plaintiff's contentions are without merit.

Plaintiff failed to appear at the administrative hearing on April 3, 2019. Tr. 174. At the

2

hearing, her attorney explained that Plaintiff had traveled to North Carolina to address a family emergency, and the attorney noted that he had agreed to appear on her behalf. Tr. 174. The ALJ noted that one option was to proceed with the hearing, take any necessary witness testimony, and allow the appointed representative to question witnesses and make arguments on the claimant's behalf. Tr. 175. Regarding the record evidence, the attorney stated that he had not received some medical records he wished to submit but he had no objections to the documents that had been submitted. Tr. 175-76. The ALJ admitted evidence, including medical exhibits "1F" through "14F." Tr. 176. After Ms. Michael's attorney described his theory of the case, the ALJ stated he intended to send Ms. Michael for a second psychological consultative exam and that he would hold the record open for additional medical evidence. Tr. 176-79. The ALJ found that Ms. Michael had good cause for her failure to appear. Tr. 179. The ALJ further stated he would proffer the consultative exam report to the attorney when it became available, and, if the attorney affirmatively requested a supplemental hearing following the proffer, Ms. Michael would be entitled to one. Tr. 179-81. Finally, the ALJ offered Ms. Michael's attorney an opportunity to question the vocational expert who appeared at the hearing, but the attorney declined. Tr. 182.

Plaintiff argues the ALJ erred because his statement that the claimant appeared at the hearing was "a mistake." While Plaintiff is correct that the ALJ's decision incorrectly states Plaintiff "appeared and testified" at the hearing, the Court's analysis does not end here. As Defendant points out, error alone does not require reversal because the doctrine of harmless error applies to administrative determinations, and Plaintiff presents no argument showing she was prejudiced by the ALJ's misstatement. *See Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (pointing out courts "will not reverse the decision . . . where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges.").

Next, Plaintiff argues reversal is required because her right to procedural due process under the United States Constitution was violated because she was denied a right to appear, testify, and cross-examine witnesses at an administrative hearing.

The ALJ received records from "Memphis Lung Physicians" after the hearing and admitted them into the record. Tr. 70, 178-79, 181, 695-749. Also consistent with his statements at the hearing, the ALJ secured a psychological consultative examination of Plaintiff, which was performed on May 21, 2019. Tr. 178-79, 181, 750-57. The ALJ proffered the consultative examination report to Plaintiff's attorney on May 30, 2019. Tr. 437-38. The ALJ indicated he was inclined to enter this report into the record and advised the attorney that he could submit additional records and could request a supplemental hearing,[1] and the ALJ gave the attorney 10 days from his receipt of the proffer letter to respond. *Id.* at 438. In pertinent part the ALJ wrote:

> You may also request a supplemental hearing at which you may also have the opportunity to appear, testify, produce witnesses, and submit oral statements concerning the facts and law. If you request a supplemental hearing, I **may** grant the request. In addition, you may request an opportunity to question witnesses, including the author(s) of the new evidence. I will grant a request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues. If an individual declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.

The ALJ added that, after the expiration of the 10-day period, he would enter any new evidence into the record and issue a decision, unless he determined that a supplemental hearing was necessary. *Id*. By his response, dated June 7, 2019, Plaintiff's counsel did not request a supplemental hearing or suggest that additional records were necessary. Tr. 440-41. Instead, counsel thanked the ALJ "for the proffer of Exhibit 16F, the consultative examination report of

---

[1] During the hearing, the ALJ advised Plaintiff's counsel that he was going to "leave it up to [counsel] to request . . . a supplemental hearing" and that counsel would have to "affirmatively request" a supplemental hearing once the updated "psych CE" report had been received. Tr. 178-80.

4

Dr. Pamela Buck," and argued the report established disability.[2] *Id.* The ALJ admitted the consultative examination ("CE") report into the record and issued his decision on July 17, 2019. Tr. 57-64. Later, in an October 7, 2019, letter to the Appeals Council, Plaintiff's counsel admitted that "[c]ounsel did not request a supplemental hearing, [sic] because the CE was disabling; so, a supplemental hearing was not felt necessary, [sic] based on the ALJ stating, at the hearing, that depending on the outcome of the CE, a supplemental hearing may not be necessary." Tr. 442. Plaintiff did not request a supplemental hearing in her letter to the Appeals Council.

In this case, Plaintiff contends she had a right to "testify and the ability of her attorney to cross examine the other witnesses such as a vocational expert." Pl.'s Br. p. 8. However, the record indicates Plaintiff failed to appear at her hearing because of a family emergency, which failure was excused by the ALJ. Furthermore, Plaintiff's attorney appeared at the hearing on her behalf and declined to examine the vocational expert.[3] *See* 20 C.F.R. § 404.950(a) ("Any party to a hearing has a right to appear before the administrative law judge, either by video teleconferencing, in person, or, when the conditions in § 404.936(c)(2) exist, by telephone, to present evidence and to state his or her position. A party may also make his or her appearance by means of a designated representative, who may make the appearance by video teleconferencing, in person, or, when the conditions in § 404.936(c)(2) exist, by telephone."). And, when presented with another opportunity to appear and testify and cross-examine witnesses at a supplemental hearing, Plaintiff's counsel, on his client's behalf, knowingly and voluntarily declined the right

---

[2] The Court is quite confused by Plaintiff's assertion in her brief that her "attorney never saw that examination and [he] was astounded when he received the Unfavorable Decision indicating that Ms. Michael had actually been sent out for and attended the examination." *See* Pl.'s Br. pp. 7-8.

[3] *See* Tr. 182.

to a supplemental hearing.[4] *See* Pl.'s Br. p. 9 ("Ms. Michael's attorney through his own error did not request a supplemental hearing."). Accordingly, Plaintiff voluntarily waived any right she had to a supplemental hearing. Plaintiff cites no authority in support of a different conclusion.

For her second and final argument, Plaintiff contends the ALJ improperly weighed the medical opinions in this case. The Court finds no prejudicial error.

Ms. Michael suggests the ALJ erred in discounting Dr. Buck's opinion. As the ALJ discussed, Ms. Michael underwent a CE by Pamela Buck, Ph.D., in May 2019, after which Dr. Buck opined that Ms. Michael had bipolar disorder resulting in some significant limitations in the workplace. Tr. 61, 736-43. The ALJ discounted Dr. Buck's opinion because (1) it was inconsistent with other evidence in the record, including the opinion of Ms. Michael's treating psychiatrist, Otis Anderson, M.D., and (2) it was based on Ms. Michael's condition long after her insured status expired. Tr. 61.

A treating source is one who has provided treatment or evaluation and who has, or has had, an ongoing treatment relationship with a claimant. 20 C.F.R. § 404.1527(a)(2). The record shows Dr. Anderson was Ms. Michael's treating psychiatrist during the period under consideration, April 2016 through March 2018. Tr. 489-91, 684-90. On March 7, 2018, three weeks before Ms. Michael's insured status expired, Dr. Anderson provided a detailed RFC assessment of Ms. Michael's work-related abilities. Tr. 492-96. Dr. Anderson, as the ALJ discussed, indicated that Ms. Michael had unlimited to satisfactory mental abilities to do unskilled work. Tr. 62, 494. Dr. Anderson stated that Ms. Michael's condition was stabilized on current medication, and he based his assessments of Ms. Michael's work-related abilities on objective exam findings that he attached to his report. Tr. 493, 496. It was appropriate that the

---

[4] *See* HALLEX I-2-4-25(D)(2)(b) (allowing the ALJ to offer the claimant a supplemental hearing after the claimant fails to appear at a scheduled hearing where the claimant has shown good cause for her failure to appear).

ALJ found Dr. Anderson's opinion persuasive because it was "consistent with his treatment notes which document improvement with medication and mostly normal mental status examinations." Tr. 62, 686-90; 20 C.F.R. § 404.1527(c)(2). Because Dr. Buck did not hold the same treating source status that Dr. Anderson held, and her assessments were inconsistent with Dr. Anderson's assessments, the ALJ permissibly favored Dr. Anderson's treating source opinion over Dr. Buck's opinion. Tr. 61-62, 492-96; 20 C.F.R. § 404.1527(c)(2). During oral argument, Ms. Michael's attorney suggested Dr. Anderson was not the claimant's treating physician;[5] however, this argument avails the claimant nothing because accepting it would lead to the mere conclusion that Dr. Anderson's and Dr. Buck's opinions should be on equal footing in the sense that they are both mere examining opinions. *See* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). Ultimately, the reasons the ALJ gave for attributing more weight to Dr. Anderson's opinion and for discounting Dr. Buck's opinion, including the reason that follows, are supported by substantial evidence in the record.

It was also appropriate that the ALJ attributed little probative value to Dr. Buck's opinion based on the timing of Dr. Buck's exam. Tr. 61. If a claimant has an ongoing impairment, the relevant inquiry is whether the claimant was disabled during the relevant period, not whether the impairment ultimately progressed to a disabling condition after the date last insured. *Cf. Thomas v. Colvin*, 587 F. App'x 162, 165 (5th Cir. 2014) (per curiam). Dr. Buck's assessments of poor ability in many areas of Ms. Michael's mental functioning, which were made more than a year

---

[5] This argument is unfounded as the record clearly demonstrates the claimant was seen by Dr. Anderson on multiple occasions from 2016 through 2018. *See*, *e.g.*, Tr. 684-690.

after Ms. Michael's date last insured, Tr. 755-56, likely reflect a deteriorating condition when compared to Dr. Anderson's assessments of unlimited to satisfactory mental abilities, which were made just before Ms. Michael's date last insured.[6] Tr. 494. "[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (cleaned up).

And, to the extent Plaintiff argues the ALJ failed to assess the consultative opinion of Dr. Michael Whelan and "compare" it with Dr. Buck's opinion, this argument also fails because Plaintiff has shown no prejudice. Indeed, in his May 2016 CE report, Dr. Whelan provided no RFC assessment and forecasted that the claimant's condition would be dependent on treatment provided by her psychiatrist. Dr. Whelan wrote:

> She has just started a new regimen of medication. Hopefully, she will be sleeping better and get relief from her anxiety . . . . Her psychiatrist's records certainly should be reviewed but for now it would seem that any significant improvement is going to be directly related to how efficacious changes to medication can be to treat her anxiety and depression.

Tr. 478. As pointed out above and supported by treatment records, the claimant eventually stabilized on her medications. Tr. 493.

Because I find Plaintiff's arguments without merit, the Acting Commissioner's decision will be affirmed.

Signed this 29th day of November, 2021.

/s/ Jane M. Virden
U.S. Magistrate Judge

---

[6] Plaintiff, without any support whatsoever, contends that "if Dr. Buck had been asked she would most likely have indicated that Ms. Michael's condition would have related back more than a year." Pl.'s Br. p. 12. Even if this were true, Plaintiff fails to appreciate the fact that the ALJ was, nevertheless, entitled to attribute more weight to the opinion of the claimant's treating physician, whose opinion is supported by substantial evidence in the record.